JUSTICE BAKER,
dissenting.
¶33 I would conclude that the issues raised in the Plaintiffs’ complaint are not ripe for resolution, and therefore would have reversed the District Court’s June 5, 2012 Opinion and Order. I now dissent from this Court’s ruling on Issue One of the appeal and would not reach Issue Two absent approval of LR-123 by a majority of voters casting ballots in the general election.
¶34 As I discussed in my dissent in Reichert, this Court generally determines the constitutionality of legislation “only if, and after, a duly-enacted law has been challenged.” Reichert, ¶ 93 (Baker, J., dissenting). While the Court acknowledges that we use caution in entertaining pre-election challenges to ballot measures (Opinion, ¶ 13), its decision today marks the second time in the last four months-only the third since passage of the 197 Constitution-that the Court has preempted a measure referred by the Legislature from reaching the *275 ballot.[1] Current statutes express “a clear preference” for deferring consideration of constitutional issues until and unless a ballot measure becomes law. Montanans Opposed to I-166, ¶ 14 (Baker, J., concurring) (citing § 3-2-202(5), MCA (preserving “the right to challenge a ballot issue enacted by a vote of the people”), and § 13-27-316(6), MCA (“This section does not limit the right to challenge a constitutional defect in the substance of an issue approved by a vote of the people.”)). Deference is particularly warranted where a measure is referred by the Legislature, since it already has been through an extensive review process by legislative staff, public hearings, and deliberation by the legislative body. See Harper v. Greely, 234 Mont. at 268, 763 P.2d at 656. In my view, there is a strong case here for allowing the measure to go to the voters before addressing its alleged constitutional infirmities.
¶35 First, the Court’s determination in Reichert to decide the constitutional issues prior to a vote on LR-119 turned on its conclusion that “the disenfranchisement will occur this election cycle” because the referendum would affect judicial offices that were on the very same ballot as the referendum. Reichert, ¶ 58. In contrast, LR-123 would not have taken effect until January 1, 2013, and affected no one’s immediate interest. Even under the principles of Reichert, this case is not the extraordinary one in which pre-election review should be granted.
¶36 In addition, as the Court observes, this case comes to us on the District Court’s grant of summary judgment for the plaintiffs. Opinion, ¶ 8. The District Court denied their motion to dismiss on the separation of powers issue, concluding that the question was “more murky” and could not be determined on the face of the pleadings. Only after considering the detailed affidavits of the Director of the Department of Revenue and the Principal Fiscal Analyst for the Legislative Fiscal Division did the District Court determine that LR-123 constituted an unconstitutional delegation of legislative authority. Rather than a case of palpable facial invalidity,[2] determining LR-123’s constitutionality impelled the District Court to consider evidence, including factual information such as potential forest fire expenditures *276 and the Legislature’s failure to adopt the LFA’s revenue estimates in previous sessions.
¶37 “[T]he constitutional requirement of a ‘case or controversy’ ” obligates the courts to refrain from issuing advisory opinions. Greater Missoula Area Fed’n of Early Childhood Educators v. Child Start, Inc., 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881. That the parties “have clearly articulated their positions” says nothing about whether the issues are either hypothetical or concrete. Opinion, ¶ 18. The Court’s acknowledgment that the LFA’s calculations would not be required until August 2013 undermines its conclusion that the issues require a decision before the 2012 election. Opinion, ¶ 18. The measure would “have a definite impact upon the State treasury” only if the voters approve it. If that were to occur, there would be plenty of time for this Court to consider and decide the constitutional issues before any action would be required by the new law.
¶38 It is ironic that the constitutional defect on which the Court’s decision rests is the Legislature’s violation of the principle of separation of powers. Opinion, ¶ 30. While the Court faults the Legislature for attempting to short-cut the constitutional process, it too is being unfaithful to that process by deciding the validity of a proposed law. I do not agree that voter rights are not at stake here. Much about the electoral process could be characterized as “a waste of time and money for all involved.” Opinion, ¶ 18. Nonetheless, “[c]onvenience and efficiency are not the primary objectives-or the hallmarks-of democratic government ....” Immig. & Naturalization Serv. v. Chadha, 462 U.S. 919, 944 (1983). It is the Court’s unflagging obligation to protect the rights guaranteed by the Montana Constitution, including its provisions governing initiative and referendum. Efficiency should not outweigh the people’s constitutionally prescribed right to vote on measures referred by the Legislature. Reichert, ¶ 99 (Baker, J., dissenting). The courts then should perform their constitutional duty to hear and decide challenges to laws that are duly enacted, even those the people have directly approved. As the Supreme Court has observed, while governmental processes “often seem clumsy, inefficient, even unworkable... [,] [tjhere is no support in the Constitution or decisions of this Court for the proposition that the cumbersomeness and delays often encountered in complying with explicit constitutional standards may be avoided, either by the Congress or by the President.” Chadha, 462 U.S. at 959 (citation omitted).
¶39 The same holds true for the third branch of government. This *277 Court should not start down the path of routinely granting pre-election review of legislative referenda, particularly where litigation timelines are so limited and comprehensive consideration of constitutional questions may be short-changed. In my opinion, we are “overly ambitious” in reaching the merits of this dispute.
JUSTICE RICE and JUSTICE COTTER join in the dissenting Opinion of JUSTICE BAKER.

 The first was Cobb v. State, 278 Mont. at 309, 924 P.2d at 269, where we kept a legislatively-proposed constitutional amendment off the ballot because its approval by voters “would leave a defect in the constitution which could not be remedied except by another election. ” (Emphasis added.)

 State ex rel. Steen v. Murray, 144 Mont. at 69, 394 P.2d at 765.